Order Entered.

_____
L. Edward Friend, II
United States Bankruptcy Judge
Dated: Wednesday, January 04, 2006 1:36:47 PM

# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE | § | |
| | § | |
| WAYNE T. SMITH | § | BK NO. 5:04-bk-04043 |
| and | § | |
| BARBARA M. SMITH, | § | |
| | § | |
| Debtor(s). | § | |
| | § | |
| CHASE MANHATTAN BANK USA, N.A., | § | |
| | § | |
| Plaintiff(s), | § | |
| v. | § | AP NO. 5:05-ap-00037 |
| | § | |
| WAYNE T. SMITH, | § | |
| | § | |
| Defendant(s). | § | |

## ORDER FINDING DEBT DISCHARGEABLE

Wayne T. and Barbara M. Smith ("Debtors") filed their Chapter 7 petition on November 16, 2004, and listed "Chase" as the holder of an unsecured non-priority claim against Mr. Smith for "credit card purchases" on account number 6436 for $10,658.85. On March 9, 2005, Chase Manhattan Bank, N.A. ("Chase") filed this adversary proceeding against Mr. Smith alleging that $5,500 of his debt was incurred as the result of a cash advance within 60 days of Debtor's petition date and is, therefore, presumed nondischargeable under 11 U.S.C. § 523(a)(2)(C). The complaint went on to assert that, based on Debtors' income and entire debt load, they borrowed from Chase without the intent to repay. Chase further alleges nondischargeability based on false pretenses, false representations, or actual

fraud, under § 523(a)(2)(A).  Debtors answered, a telephonic pre-trial hearing was conducted, and discovery took place.  On September 20, 2006, a trial took place in Wheeling.  Both Debtors testified and Plaintiff offered documentary evidence.  At the conclusion of the trial, the Court directed both parties to file their closing statements with the Court, at which time the matter would be taken under advisement.  The parties having done so, the Court enters this Order.

Debts incurred by false pretenses, a false representation, or actual fraud are nondischargeable. § 523(a)(2)(A).  The general rule is that a plaintiff/creditor bears the burden of proving such bad acts by a debtor.  An exception to this general rule, however, is found in § 523(a)(2)(C), which shifts the burden of proof to debtors for "consumer debts owed to a single creditor and aggregating more than $1,000 for 'luxury goods or services' incurred by an individual debtor on or within 60 days before the order for relief under this title, or cash advances aggregating more than $1,000 that are extensions of consumer credit under an open end credit plan obtained by an individual debtor on or within 60 days before the order for relief under this title."  The shift in burden is because such debts "are presumed to be nondischargeable." Id.  For discharge, therefore, *debtors* must prove by a preponderance of the evidence that they did not employ false pretenses, a false representation, or actual fraud to obtain the debt in question.

Under a similar set of facts in First Card Services, Inc. v. Kitzmiller (In re Kitzmiller), 206 B.R. 424 (Bankr. N.D.W. Va. 1997), this Court acknowledged that there is general agreement as to the elements of fraud.  They are:

    1. That the debtor made a representation;
    2. That at the time the debtor made the representation, the debtor knew it was false;
    3. That the debtor made the representation with the intention and purpose of deceiving the

2

      creditor;
      4. That the creditor relied on such representation; and
      5. That the creditor sustained the alleged losses as the proximate result of the representations.

With the § 523(a)(2)(C) presumption, the evidence that a debtor incurred such an obligation satisfies these five elements. However, because the elements of fraud are conjunctive, the debtor need only successfully rebut one element to prevail.

      Here, the evidence shows that Debtor Wayne Smith accepted and cashed a convenience check (the equivalent of a cash advance) for $5,500. The money was deposited into Debtors' checking account at Hancock County Savings Bank and used to pay off other credit cards held by Debtors. Mrs. Smith, who admittedly ran the family finances, engaged in a pattern of transferring balances from credit card account to account in order to take advantage of low payment minimums and low or no interest offers from credit cards. The sole question here is whether the evidence related to this one $5,500 convenience check charge/balance transfer rebuts any of the elements of fraud, above.

      In the Court's view, if the Debtors used the card in question as merely a final pre-bankruptcy catch-can for their credit card debt, and if they had made nothing but minimum payments, the answer would be simple. However, the detailed statements offered by Plaintiff show a course of dealing between the parties that is quite different from that scenario.

      In April 2003, Debtors transferred two card balances onto the Chase card. On June 7, 2003, Debtors transferred a $360 balance which they then nearly paid off two weeks later. Similar patterns continued until October 2003, when the card was first used for retail charges, and more balance transfers. On October 17, 2003, Chase accepted a payment of $7,256, which was presumably a balance transfer to another company's account. In March 2004, Chase accepted a payment of

3

$6,600, again likely from another card.  From April 2003 to November 2004, Debtors were never delinquent on their Chase account, despite carrying a usual balance of roughly $4,000 to $7,000. During that 20 month period, they paid more than the required minimum payment every month but five.

The Court finds that the $5,500 cash advance, used to pay off other debt, was nothing more than another instance (albeit the final instance) of Debtors juggling their finances in a manner they had been accustomed.[1]  If their use of Chase's credit was in fact a representation that Chase would be paid, and Chase extended credit in reliance, then the course of dealing between the parties indicates that the representation was made in good faith, as the history between the parties indicates that Chase would indeed be paid.  It was no more fraudulent then Debtors' previous balance transfers, which, as indicated from the account statements, Plaintiff benefitted from four times.[2]  It was merely the last instance.  The Court concedes that Debtors mismanaged their finances.  However the evidence rebuts the Code's presumption of fraud, as Mr. Smith had no intent or purpose to deceive Plaintiff when he cashed the $5,500 convenience check Plaintiff provided him.

For these reasons, the Court finds the debt due and owing Chase Manhattan Bank USA, N.A. by Wayne T. Smith to be **DISCHARGEABLE** and it is **SO ORDERED**.

The Clerk is directed to transmit copies of this Order to the parties in interest.

---

[1] And in a manner in which they had no doubt been enticed.  For instance, see Debtors' April 2004 Chase statement. With no less than eleven balance transfers onto the account and three payments made from transfers from other cards to date, the Chase statement has this notice: "CONGRATULATIONS! AS A VALUED CARDMEMBER, YOUR CASH LINE HAS BEEN INCREASED TO THE SAME AMOUNT AS YOU R CREDIT LINE AS OF MARCH 2004. PLEASE ENJOY YOUR INCREASED CASH LINE FOR ALL YOUR CREDIT NEEDS." (Emphasis in original.)

[2] Payments of: $7,256 made to Chase on October 17, 2003; $4,898.70 made the Chase on November 25, 2004; $6,600 made to Chase on March 12, 2004; and $3,000 made to Chase on July 13, 2004.

5